**STATE of Minnesota, Respondent,**

v.

**James Edward CARR, Jr., Appellant.**

**No. A04–338.**

Court of Appeals of Minnesota.

Feb. 15, 2005.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, and Joseph A. Evans, Becker County Attorney, Detroit Lakes, MN, for respondent.

Bridget Kearns Sabo, Assistant State Public Defender, Minneapolis, MN, for appellant.

* Retired judges of the Minnesota Court of Appeals, serving by appointment pursuant to

Considered and decided by TOUSSAINT, Chief Judge, HUSPENI, Judge,* and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellant James Edward Carr, Jr. contends, under Minn.Stat. § 609.035 (2002), that he is entitled to the reversal of his sentence for possessing a controlled substance, arguing that this conviction arose out of the same behavioral incident that led to his conviction of unlawful manufacture of the substance. We reverse the possession sentence. There being no merit in appellant's additional contention that his right to judicial review was handicapped by the district court's failure to record the instructions read to the jury, we affirm appellant's convictions for manufacture and possession.

## FACTS

In June 2003, during a lawful search of appellant's garage, Becker County deputy sheriffs found muriatic acid, a hotplate, and a coffee pot and spoon coated in a white powder. Behind the garage they found an empty toluene can. Because the items found in and near the garage can be used to make methamphetamine, the deputies contacted a narcotics investigator, who obtained a search warrant for appellant's residence.

Officers executing the search warrant found four empty bottles of pseudoephedrine pills, over 100 pills, a lithium battery, a half-used box of coffee filters, coffee filters with white residue on them, more toluene cans, two hoses, Coleman fuel, three glass jars, salt, and an empty propane tank that had stored anhydrous am-

Minn. Const. art. VI, § 10.

monia. In the yard they found a one-liter soda bottle containing two layers of liquid; the liquid tested positive for methamphetamine.

Appellant was charged with a first-degree controlled substance crime for possessing methamphetamine under Minn. Stat. § 152.021, subd. 2 (Supp.2003) and a first-degree controlled substance crime for manufacturing methamphetamine under Minn.Stat. § 152.021, subd. 2a(a) (Supp. 2003). At appellant's jury trial, a narcotics investigator testified that methamphetamine is unusable in a liquid form. To finish the manufacturing process and turn the liquid methamphetamine into a usable powder, the liquid methamphetamine must be mixed with pseudoephedrine and water; separated; filtered using a baster, funnel, or cooler with a spout; mixed with hydrogen chloride gas; filtered again; and dried.

At the sentencing hearing following appellant's conviction of both charges, he argued that because the two crimes were part of the same course of conduct, he should be given one sentence for both convictions and that the possession conviction was actually a lesser-included offense of the manufacturing conviction. The district court imposed two concurrent sentences, one for each conviction. To determine the sentence for appellant's second conviction, the district court counted appellant's first conviction towards his criminal-history score. With a criminal-history score of one point for appellant's first sentence and three points for the second, the district court imposed a 98–month sentence for the manufacturing conviction and a 122–month sentence for the possession conviction.

## ISSUES

1. For an appellant convicted of manufacturing an unlawful substance, does the charge of possessing that substance before completion of the manufacturing process arise out of the same behavioral incident under Minn.Stat. § 609.035, subd. 1 (2002)?

2. Where an appellant has made no attempt to reconstruct the record and makes no claim that the district court provided erroneous instructions to the jury, is the district court's failure to transcribe the reading of jury instructions reversible error?

## ANALYSIS

### 1.

If a defendant's conduct constitutes multiple offenses but is part of the same behavioral incident, the district court may impose only one sentence. Minn.Stat. § 609.035, subd. 1 (2002); *State v. Heath,* 685 N.W.2d 48, 61 (Minn.App.2004), *review denied* (Minn. Nov. 16, 2004). The state has the burden to prove by a preponderance of the evidence that the underlying conduct was not part of a single behavioral incident. *State v. Williams,* 608 N.W.2d 837, 841–42 (Minn.2000). "The determination of whether multiple offenses are part of a single behavioral act under section 609.035 is not a mechanical test, but involves an examination of all the facts and circumstances." *State v. Soto,* 562 N.W.2d 299, 304 (Minn.1997). The factors to be considered under Minn.Stat. § 609.035 are "time, place, and whether the offenses were motivated by a desire to obtain a single criminal objective." *Id.* The district court's decision of whether multiple offenses are part of a single behavioral incident is a fact determination and should not be reversed unless clearly erroneous. *Heath,* 685 N.W.2d at 61.

The state contends that the offenses did not occur at the same time and were motivated by different criminal objectives. First, the state argues that the offenses of

manufacturing and possessing methamphetamine did not take place during the same time period because, until appellant completed manufacturing the methamphetamine, there would have been no methamphetamine for him to possess. But the methamphetamine found outside appellant's garage, although having characteristics permitting a possession conviction, was in liquid form, and needed to be mixed with pseudoephedrine and water, separated, mixed with hydrogen chloride gas, filtered, and dried before the manufacturing process was complete. Second, the state argues the objective of one offense was to manufacture the drug and the objective of the other was to possess 'it. But if the methamphetamine was not yet in a usable form, the only reason to possess it would be to complete the manufacturing process.

The state compares this case to *Heath,* but Heath was charged with conspiracy to manufacture methamphetamine and aiding and abetting the possession of methamphetamine with intent to sell. *Id.* at 55. The court in *Heath* noted that a conspiracy had been committed when the co-conspirators agreed to manufacture methamphetamine and completed an overt act in furtherance of the conspiracy. *Id.* at 61. The court stated that the agreement and overt act of purchasing materials to make methamphetamine was completed before the co-conspirators possessed the drug, so that the two offenses were divisible. *Id.* In the immediate case, the methamphetamine in appellant's possession was in an unusable liquid form, still involved in the manufacturing process. Although the

methamphetamine in *Heath* was wet, it was already in a usable powder form.

Additionally, appellant is charged with manufacturing and possession, not conspiracy to manufacture and possession. Although a conspiracy to manufacture methamphetamine will typically be completed by the time the conspirators are in possession of the drug, manufacture and possession can occur at the same time because a person in the later stages of the manufacturing process would be in possession of some form of methamphetamine and the manufacture may not be complete.

 Taking into account the time, place, and objectives of appellant's manufacture and possession of methamphetamine, the manufacture and possession were part of the same behavioral incident, and sentencing appellant twice was not permissible. *See* 'Minn.Stat. § 609.035, subd. 1; *Williams,* 608 N.W.2d at 841.[1]

 Additionally, appellant's challenge to his second sentence poses an argument asserting that possession of methamphetamine is a lesser-included offense of manufacturing methamphetamine. If so, the second conviction could not stand. The legislature has defined a lesser-included offense, in part, as "[a]n attempt to commit the crime charged; or . . . [a] crime necessarily proved if the crime charged were proved[.]" Minn.Stat. § 609.04, subd. 1 (2002). As the state asserts, to determine whether one crime necessarily is proved by proof of another, the court looks at the statutory definitions of the crimes, not the facts of a particular case. *State v. Gisege,* 561 N.W.2d 152, 156

---

**1.** Appellant makes the additional argument that the district court erred in using the *Hernandez* method to increase his sentence for possessing methamphetamine from 98 months to 122 months. Because we conclude that the district court erred by sentencing appellant twice, we do not need to independently address the question of whether the district court erred by adding the criminal-history points for appellant's manufacturing conviction to his criminal-history score before calculating appellant's sentence for possession.

(Minn.1997). Possession of methamphetamine is not necessarily part of an attempt to manufacture methamphetamine. Possession is not necessarily proven if manufacture is proven because the prosecutor can prove a person manufactured "any amount of methamphetamine" without proving the elements of a possession charge, that the person "unlawfully possess[ed] one or more mixtures of a total weight of 25 grams or more containing cocaine, heroin, or methamphetamine[.]" Minn.Stat. § 152.051, subds. 2, 2a (2002). Ultimately, we decline to decide this issue because it has not been fully presented; appellant erroneously posed the argument as part of his attack on the sentence.

## 2.

Appellant also contends that the district court committed reversible error in failing to require recording and transcription of its reading of jury instructions. Before the parties delivered their closing arguments, the judge announced that written jury instructions would be read aloud "so that [my] words are selected in advance and [I don't] say something inadvertently that seems to favor one side of an issue." The court reporter did not record the instructions the judge read. Appellant does not argue that the district court gave an erroneous instruction but asserts that the failure to record and transcribe jury instructions destroyed appellant's right to review. Although it would be a mistake to minimize the importance of making a record of all proceedings in the district court, appellant has not demonstrated that his right to review was destroyed or that he is entitled to a reversal of his convictions.

The Minnesota Rules of Criminal Procedure provide methods for dealing with an incomplete transcript, calling for development of a statement of the case or proceedings that is approved by the trial court and becomes the record on appeal. Minn. R.Crim. P. 28.02, subds. 8–9; *see also* Minn. R. Civ.App. P. 110.03.

Appellant cites to *Hoagland v. State,* 518 N.W.2d 531 (Minn.1994), to support his claim that the reversal of his convictions is required. In *Hoagland,* the Minnesota Supreme Court considered a case in which there was no transcript of a jury trial. The court reporter's notes were never transcribed, and the court reporter destroyed the stenographic notes of the trial. *Id.* at 533. The district court denied Hoagland's subsequent petition for postconviction relief. *Id.* at 532. Because the district court judge and defense counsel made potentially misleading statements to Hoagland about the appeal process, and because the death of the trial judge made it impossible to reconstruct the trial in a statement of the case, the supreme court determined that a new trial would be necessary unless the state would be unduly prejudiced by a retrial. *Id.* at 535, 537. Thus, the supreme court remanded the case to the district court to determine whether the state would be unduly prejudiced. *Id.* at 537. The court noted that if reconstruction of the record had been possible, the court would not have remanded the case for a determination of prejudice. *Id.* at 535.

Appellant has not shown that the prosecutor, appellant's trial attorney, or the district court judge are unavailable to provide their recollection of what the judge said when instructing the jury. Appellant did not attempt to reconstruct the record, and he asserts no claim that the district court judge gave the jury improper instructions. Under these circumstances, appellant is not entitled to the reversal of his convictions.

## DECISION

Because the offenses of possession and manufacturing methamphetamine arose

from the same behavioral incident, we reverse appellant's sentence for possession. We also affirm appellant's convictions because appellant has not shown the district court judge provided erroneous instructions to the jury and appellant failed to follow the proper procedure to reconstruct the missing part of the record.

**Affirmed in part and reversed in part.**